```
FILED
IN OPEN COURT

SEP  2 2021

CLERK, U.S. DISTRICT COURT
       NORFOLK, VA
```

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:21cr 111 |
| ) | |
| CHAELA CHANISE THARP, ) | Conspiracy to Commit Mail Fraud |
| (Counts 1 – 10) ) | 18 U.S.C. § 1349 |
| ) | (Count 1) |
| LAISHI JOANNA GEORGE ) | |
| a/k/a LAISHI JOANNA DARGAN ) | Mail Fraud |
| a/k/a LAISHI JOANNA CHAPMAN ) | 18 U.S.C. §§ 1341 & 2 |
| a/k/a LAISHI JOANNA GOODMAN ) | (Counts 2 – 7) |
| a/k/a LAISHI JOANNA BARBER, ) | |
| (Counts 1, 5 – 7, 9, 10) ) | Aggravated Identity Theft |
| ) | 18 U.S.C. §§ 1028A(a)(1) & 2 |
| MARK HOLLIS HILLIARD, ) | (Counts 8 – 9) |
| (Counts 1 – 4, 8, 10) ) | |
| ) | Conspiracy to Commit Fraud in |
| and ) | Connection with Major Disaster Benefits |
| ) | 18 U.S.C. § 371 |
| ELVON TYRAIL GEORGE ) | (Count 10) |
| (Counts 1, 5 – 7, 9, 10) ) | |
| ) | Criminal Forfeiture |
| Defendants. ) | 18 U.S.C. § 981(a)(1)(C) |

**INDICTMENT**

September 2021 Term – at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

<u>Introductory Allegations</u>

1. Unemployment Insurance ("UI") is a joint state-federal program that is intended to provide temporary financial assistance to unemployed workers who are unemployed through no fault of their own. The federal UI trust fund finances the costs of administering

1

unemployment insurance programs, loans made to state unemployment UI funds, and half of extended benefits during periods of high unemployment. States can borrow from the federal fund if their own reserves are insufficient. Each state, including the Commonwealth of Virginia, administers a separate UI program, but all states follow the same guidelines established by federal law.

2. In March 2020, the United States was in the midst of the coronavirus ("COVID-19") pandemic, which resulted in the shutdown of numerous businesses and caused millions of American workers to be out of work. On March 13, 2020, the President declared a national emergency under Section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 *et seq.* ("Stafford Act"). On March 18, 2020, the President signed into law the Families First Coronavirus Response Act ("FFCRA"), which provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020. The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic. The CARES Act dedicated over $250 billion to give workers more access to unemployment benefits during the public health emergency.

3. Two of the principal ways in which the CARES Act expanded unemployment benefits during the pandemic was by 1) making those benefits available for those who have not traditionally qualified, such as contractors, self-employed, and gig workers and 2) substantially increasing the amount of money paid to those who qualify for unemployment benefits.

4. As of April 18, 2020, the President had declared that a major disaster exists in all

2

States and territories under Section 401 of the Stafford Act. On August 8, 2020, to further offset the pandemic impact on American workers, the President authorized the Federal Emergency Management Agency ("FEMA") to expend up to $44 billion from the Disaster Relief Funds for lost wage payments. The President authorized FEMA Administrator to provide grants to participating states, territories, and the District of Columbia to administer delivery of lost wages assistance ("LWA") to those receiving unemployment insurance.

5. The Virginia Employment Commission ("VEC") is responsible for administering the unemployment compensation program in the Commonwealth of Virginia. This unemployment compensation program provides temporary financial assistance to individuals who become unemployed through no fault of their own. Specifically, prior to the expanded COVID-19 benefits described below, eligible recipients received a minimum of $158 per week in traditional UI benefits.

6. The VEC divided the unemployment compensation program into the following four UI benefit components based upon the CARES Act and the FEMA LWA authorization:

i. Federal Pandemic Unemployment Compensation Program ("FPUC") – The CARES Act increased benefits for workers collecting UI by $600 per week for claims effective on or about March 29, 2020, through on or about July 31, 2020, thereby increasing the weekly benefit to $758 per week.

ii. Pandemic Unemployment Assistance ("PUA") – The CARES Act expanded unemployment benefits for individuals who did not qualify for traditional UI benefits, including the self-employed, independent contractors, and gig workers. The PUA benefit expansion applied to weeks of unemployment beginning on or about January 27,

3

2020.

iii. Pandemic Emergency Unemployment Compensation ("PEUC") – The CARES Act provided up to 13 weeks of unemployment insurance benefits to those who have exhausted their eligibility, and applied to weeks of unemployment from on or about March 29, 2020 through on or about December 31, 2020.

iv. Lost Wages Assistance ("LWA") – The FEMA LWA authorization provided an additional $300 per week to claimants in Virginia who are eligible for at least $100 per week in unemployment insurance compensation. For claimants in Virginia, LWA was automatically paid out in one lump sum of $1,800 on or about October 15, 2020, covering the time period between on or about July 25, 2020 (when $600/week PUA benefits expired), and September 5, 2020, so long as the claimant had certified unemployment eligibility during that time period. LWA funds are federal monies, but their distribution was administered by the VEC.

7. Unemployed workers did not file separate claims for PUA, FPUC, and LWA benefits. Rather, an existing approved PUA claim resulted in automatic approval for and payment of FPUC ($600/week) and LWA ($300/week) benefits.

8. Unemployed workers in the Commonwealth of Virginia can file for UI benefits either by phone or through the VEC on-line portal. To be eligible for UI benefits, the claimants must have been separated from their employer or had their hours reduced by their employer.

9. The VEC application for a UI claim requires entry of personally identifiable information Name, Date of Birth, Social Security Number, Physical Address, Phone Number. It also requires answering a series of questions to verify eligibility, such as their work history,

4

name of the employer, the reason for separation, that they are ready, willing, and able to work, and, to qualify for PUA, that they lost their job due to COVID-19. In addition as an extra verification step, the applicant could chose to answer a security phrase.

10. Once the VEC approves a UI claim, claimants must re-certify their unemployment status on a weekly basis. The claimant must certify that they are ready, willing and able to work each day during the weeks they claimed UI. Both initial applications and weekly re-certifications are attested to as truthful under penalty of perjury.

11. Successful applicants may choose whether to have VEC deposit their unemployment benefits directly in a linked bank account, or loaded onto a prepaid debit card (called "Way2Go" cards) which is shipped to the applicant via the United States Postal Service ("USPS") to the physical address listed on the application. For applicants who choose a debit card, a Personal Identification Number ("PIN") for the card is sent to the address listed on the application in a separate mailing. Prepaid debit cards are automatically reloaded with newly disbursed funds via electronic transfers using the Internet.

12. Under the CARES Act, the VEC approved PUA benefits for workers who normally would not qualify for UI benefits, to include the self-employed, freelancers, and independent contractors. Such workers typically don't have a wage history for the VEC to verify. Based on this PUA change, the VEC had to rely and trust the information provided by the claimant as the VEC could not quickly verify the information. In an effort to ensure workers who were unemployed due to the pandemic received their benefits in a quick manner, the VEC processed and paid out these claims shortly after the claims were submitted. The certification of those self-employed did not initially require any documentary evidence to be provided in support

of that certification.

13. In or around June 2020, the VEC began reviewing UI claims to identify potentially fraudulent claims under the expanded PUA eligibility. By August 2020, VEC officials had learned from other states that inmates in correctional facilities were receiving UI benefits. Incarcerated individuals are not available for employment, nor are they able to seek full time employment. Further, these individuals are unemployed due to their own criminal conduct and not due to COVID-19 reasons. For those reasons, they are not eligible to receive UI benefits, including PUA, LWA, and FPUC. Consequently, VEC obtained a list of inmates housed by the Virginia Department of Corrections ("VADOC") and cross-matched the Virginia UI claims to people who were shown to be claimants on the inmate list. In November 2020, once a review of the data showed how the fraud scheme was unfolding, the VEC froze all claims made on behalf of VADOC inmates.

14. The VEC on-line portal captures the IP address when there is an account log-in, such as to file an initial claim or to conduct the weekly recertification.

15. Defendant MARK HOLLIS HILLIARD and Conspirator E.G. were inmates at the Greensville Correctional Center ("Greensville"), in Jarratt, Virginia, in the Eastern District of Virginia.

## COUNT ONE
(Conspiracy to Commit Mail Fraud)

16. The preceding paragraphs of this indictment are realleged and incorporated as if fully set forth herein.

17. From in or around June 2020, through in or around March 2021, in the Eastern District of Virginia and elsewhere, CHAELA CHANISE THARP, LAISHI JOANNA GEORGE

6

("LAISHI"), MARK HOLLIS HILLIARD, and ELVON TYRAIL GEORGE ("ELVON") ("defendants"), and others known and unknown, knowingly and intentionally combined, conspired, confederated and agreed to commit mail fraud. Specifically, the defendants, and others known and unknown, having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme or artifice and attempting so to do, knowingly deposited and caused to be deposited any matter and thing whatever to be sent and delivered by any private and commercial interstate carrier; and knowingly caused to be delivered by mail and such private and commercial interstate carrier any matter and thing whatever according to the direction thereon and at the place at which it is directed to be delivered by the person to whom it is addressed, in violation of Title 18, United States Code, Section 1341. The aforementioned violations occurred in relation to, and involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency as those terms are defined in section 102 of the Stafford Act.

18. The purpose of the conspiracy was for the defendants and others to profit personally by obtaining hundreds of thousands of dollars in UI benefits to which they were not entitled.

19. The ways, manner and means by which the defendants sought to accomplish this conspiracy included, but were not limited to, the following:

    a. HILLIARD and ELVON recruited other inmates at Greensville to provide their personally identifiable information ("PII"), namely, date of birth and social security numbers, to THARP and/or LAISHI so that THARP could file UI

claims in the inmates' names, or assist LAISHI in doing so. Most often, LAISHI obtained the inmates' PII from GEORGE or the inmate themselves, and then passed the PII to THARP who filed the UI claims. HILLIARD also passed some inmates' PII directly to THARP, and also gave inmate PII to another outside facilitator, A.T., to file fraudulent U.I. claims. Many of these transmissions of personally identifiable information were captured on recorded jail phone calls, although HILLIARD occasionally attempted to conceal his fraudulent conduct by using a made-up code when discussing the UI scheme, such as saying the inmate was interested in legal representation (rather than unemployment benefits) or using an alphabetical code.

b. For the UI applications to be successful, THARP had to provide numerous false inputs in required fields on the VEC website. This included a false physical address, telephone number, e-mail address, and last employer. The physical address was identical for many of the inmate UI claims—and none accurately used their address of incarceration—as was the security question response.

c. THARP further falsely certified that the inmates were unemployed through no fault of their own due to the COVID-19 pandemic, and that they were ready and willing and able to work.

d. Both THARP and GEORGE repeated false recertifications for the claims on a weekly basis to ensure benefits would continue to be paid.

e. THARP elected for many of the UI benefits to be paid through a preloaded Way2Go debit card, which was mailed to the physical address she listed on the

      application along with a PIN in a separate mailing. Other benefits were paid to commercial banks, which then mailed prepaid debit cards to the address THARP selected.

f. LAISHI and THARP agreed that THARP would take a cut of several thousand dollars from each inmate claims for which LAISHI provided the PII. THARP and LAISHI also each agreed with the inmates about dividing the proceeds from the claims, but grossly understated the value of the claims so that THARP and LAISHI could themselves keep the majority of the proceeds. ELVON and LAISHI also agreed that ELVON would lie to the other Greensville inmates about the value of the claims so that he and LAISHI could keep a greater amount for themselves. In furtherance of these agreements, THARP and LAISHI paid thousands of dollars from the Way2Go debit cards to HILLIARD, GEORGE, and other inmates through Cash App, a prison financial system called JPAY, and other means.

g. THARP and GEORGE used the UI funds to buy multiple vehicles, including a Chevrolet Tahoe purchased by THARP and a Chevrolet Tahoe and Dodge Charger purchased by GEORGE.

h. In sum, THARP filed approximately fourteen successful UI claims using Greensville inmates' PII; ten of these claims were with PII that LAISHI provided. The defendants also attempted at least five additional claims which were not successful, for instance because a claim had already been filed for that inmate.

9

      i. As a result of the conspiracy, VEC paid at least $207,388 in UI benefits on behalf of individuals who were not entitled to receive such benefits. Once VEC realized the UI claims for were VADOC inmates, VEC was able to claw back approximately $3,593.

(In violation of Title 18, United States Code, Section 1349.)

## COUNTS TWO THROUGH SEVEN
(Mail Fraud)

20. The preceding paragraphs of this indictment are realleged and incorporated as if fully set forth herein.

21. During the period from in or around June 2020 through in or around March 2021, in the Eastern District of Virginia and elsewhere CHAELA CHANISE THARP, LAISHI JOANNA GEORGE, MARK HOLLIS HILLIARD, and ELVON TYRAIL GEORGE, the defendants, with the intent to defraud, did devise and willfully participate in, with knowledge of its fraudulent nature, a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice to defraud and for obtaining money was in substance as follows:

22. The object of the scheme and artifice devised by the defendants was to fraudulently obtain UI benefits that had been expanded due to the COVID-19 pandemic. Specifically, the defendants repeatedly provided false information to the VEC in order to obtain hundreds of thousands of dollars in UI benefits for individuals who were incarcerated in Virginia. As a result of this false information, the defendants caused the VEC to mail debit cards that were loaded with UI benefits.

23. On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting so to do, the defendants knowingly caused to be delivered by U.S. mail and by private and commercial interstate carrier according to the direction thereon:

| Count | Defendants | On or About Date | Description |
|---|---|---|---|
| TWO | THARP and HILLIARD | June 18, 2020 | Fraudulent and false VEC application for UI benefits for G.S., a Greensville inmate, causing the delivery of a Way2Go debit card with UI funds and later payment of LWA funds, resulting in a disbursement of approximately $17,056 |
| THREE | THARP and HILLIARD | June 30, 2020 | Fraudulent and false VEC application for UI benefits for T.J., a Greensville inmate, causing the delivery of a Chime Financial debit card with UI funds and later payment of LWA funds, resulting in a disbursement of approximately $16,740 |
| FOUR | THARP and HILLIARD | July 15, 2020 | Fraudulent and false VEC application for UI benefits for J.L.-R., a Greensville inmate, causing the delivery of a Way2Go debit card with UI funds and later payment of LWA funds, with a resulting loss to VEC of approximately $17,056 |
| FIVE | THARP, LAISHI GEORGE, and ELVON GEORGE | June 24, 2020 | Fraudulent and false VEC application for UI benefits for M.G., a Greensville inmate, causing the delivery of a Way2Go debit card with UI funds and later payment of LWA funds, resulting in a disbursement of approximately $16,898 |
| SIX | THARP, | June 29, 2020 | Fraudulent and false VEC application |

11

| Count | Defendants | On or About Date | Description |
|---|---|---|---|
|  | LAISHI GEORGE, and ELVON GEORGE |  | for UI benefits for A.S., a Greensville inmate, causing the delivery of a Way2Go debit card with UI funds and later payment of LWA funds, resulting in a disbursement of approximately $17,214 |
| SEVEN | THARP, LAISHI GEORGE, and ELVON GEORGE | June 29, 2020 | Fraudulent and false VEC application for UI benefits for T.M., a Greensville inmate, causing the delivery of a Way2Go debit card with UI funds and later payment of LWA funds, resulting in a disbursement of approximately $21,826 |

24. All aforementioned violations occurred in relation to, and involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency as those terms are defined in section 102 of the Stafford Act.

(In violation of Title 18, United States Code, Sections 1341 and 2.)

## COUNTS EIGHT & NINE
(Aggravated Identity Theft)

25. The preceding paragraphs of the indictment are realleged and incorporated as if fully set forth herein.

26. On or about the dates and in the manner set forth below, in the Eastern District of Virginia and elsewhere, the defendants did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit: mail fraud, in violation of 18 U.S.C. § 1341, knowing that the means of identification belonged to another actual person:

12

| Count | Defendants | On or About Date | Means of Identification | Description of Transaction | During and In Relation to Felony Violation |
|---|---|---|---|---|---|
| EIGHT | THARP and HILLIARD | June 18, 2020 | T.J.'s social security number, name, and date of birth | Fraudulent application for UI benefits in T.J.'s name | Mail Fraud, in violation of 18 U.S.C. § 1341 (see Count 3) |
| NINE | THARP, LAISHI GEORGE, and ELVON GEORGE | June 29, 2020 | T.M.'s social security number, name, and date of birth | Fraudulent application for UI benefits in T.M.'s name | Mail Fraud, in violation of 18 U.S.C. § 1341 (see Count 7) |

(In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.)

## COUNT TEN
(Conspiracy to Commit Fraud in Connection with Major Disaster Benefits)

27. The preceding paragraphs of the indictment are realleged and incorporated as if fully set forth herein.

28. From in or around June 2020, through in or around March 2021, in the Eastern District of Virginia and elsewhere, CHAELA CHANISE THARP, LAISHI JOANNA GEORGE ("LAISHI"), MARK HOLLIS HILLIARD, and ELVON TYRAIL GEORGE ("ELVON"), the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated and agreed to commit an offense against the United States. Specifically, the defendants, and others known and unknown, conspired to make materially false, fictitious, and fraudulent statements and representations, and to make and use false writings and documents knowing the same to contain materially false, fictious, and fraudulent statements and representations, in a matter involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a major disaster declaration under section 401 of the

Stafford Act, in a circumstance where the authorization, transportation, transmission, transfer, disbursement, and payment of the benefit is in and affects interstate and foreign commerce, and the benefit is transported in the mail at any point in the authorization, transportation, transmission, transfer, disbursement, and payment of that benefit, in violation of Title 18, United States Code, Section 1040(a)(2).

29. The purpose of the conspiracy and the ways, manner and means by which defendants sought to accomplish this conspiracy are identical to those set forth in paragraphs 18 and 19, above.

30. In furtherance of the conspiracy and to effect the purpose thereof, the following overt acts, among others, were committed in the Eastern District of Virginia and elsewhere:

   a. On or about June 18, 2020, HILLIARD provided THARP with the PII for G.S., who was another inmate at Greensville. Although he was providing the information to THARP so that she could file a UI claim for G.S., HILLIARD attempted to conceal his conduct on the recorded jail call by stating, "[G.S.] . . . told me to give you his information for legal work." THARP filed the claim the same day.

   b. On or about June 29, 2020, HILLIARD provided THARP with the PII for T.J., who was another inmate at Greensville. Although he was providing the information to THARP so that she could file a UI claim for T.J., HILLIARD attempted to conceal his conduct on the recorded jail call by stating, "Get this due a lawyer right now before someone else use him." THARP filed the claim the following day. On or about July 7, 2020,

      THARP and HILLIARD discuss that HILLIARD will get a cut from T.J.'s claim, and T.J. himself will get nothing.

c. On or about July 14, 2020, HILLIARD provided THARP with the PII for J.L.-R., who was another inmate at Greensville. THARP filed the claim the following day.

d. On or about June 23, and June 27, June 29, 2020, respectively, ELVON provided LAISHI with the PII for M.G, A.S.., and T.M., all inmates at Greensville, so that LAISHI could provide the PII to THARP in order for her to file the UI claims. THARP filed the claims shortly thereafter.

e. VEC did not identify T.M. as an inmate, so it did not freeze the claim in his name in November 2020 when it froze the other inmate claims. THARP continued to weekly recertify his claim through on or about February 26, 2021, resulting in continuing disbursements to the Way2Go card through in or around March 2021. The Way2Go debit card in T.M.'s name was found in THARP's residence on or about March 9, 2021. T.M. was released from VADOC custody on or about December 11, 2020.

f. On a recorded jail call on or about June 15, 2020, THARP told HILLIARD that the UI claims were worth between $4,000 and $10,000. On other recorded jail calls, including on or about July 7 and July 14, 2020, HILLIARD and THARP agreed that G.S. would get $800 for his claim, HILLIARD would get $300, and THARP would keep the rest.

g. According to JPAY records, between on or about June 30, 2020, and August 3, 2020, THARP transferred HILLIARD approximately $1,050, which funds were proceeds of the UI scheme.

h. On a recorded jail call on or about June 13, 2020, LAISHI told ELVON that UI claims were worth $3,000 and that THARP was charging $1,000 to process the claims. ELVON responded that he was going to falsely tell the other inmates that the UI claims were only worth $2,000, and that THARP was taking half of that, so that he and LAISHI could keep $1,000 for themselves.

i. According to JPAY records, between on or about Jun 15, 2020, and March 4, 2021, LAISHI transferred ELVON approximately $1,930, which funds were proceeds of the UI scheme.

(In violation of Title 18, United States Code, Section 371.)

## **FORFEITURE**

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

1.  CHAELA CHANISE THARP, LAISHI JOANNA GEORGE, MARK HOLLIS HILLIARD, and ELVON TYRAIL GEORGE, the defendants, if convicted of any of the violations alleged in Counts One through Seven of this Indictment, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2.  If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e).

3.  The property subject to forfeiture includes, but is not limited to, the following property:

    a. A monetary judgment in the amount of not less than $203,795, which represents the proceeds of the fraud scheme alleged in Counts One through Seven, which the defendants obtained;

    b. A black 2012 Chevrolet Tahoe belonging to THARP, with VIN 1GNSKBE09CR143673;

    c. $3,000 in cash found and seized at LAISHI GEORGE's residence on or about April 1, 2021;

    d. A black 2013 Dodge Charger belonging to LAISHI GEORGE, with VIN 2C3CDXCT0DH525307;

    e. A gray 2011 Chevrolet Tahoe belonging to LAISHI GEORGE, with VIN 1GNSKBE09CR143673; and

    f. VADOC inmate trust JPAY account belonging to HILLIARD.

    g. VADOC inmate trust JPAY account belonging to ELVON GEORGE.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c)).

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

*United States of America v. Chaela Chanise Tharp, et al.*
2:21CR 111

A TRUE BILL:

**REDACTED COPY**

_____
FOREPERSON

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

By: _____
E. Rebecca Gantt
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – rebecca.gantt@usdoj.gov